1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Tuvia Korobkin (SBN 268066)
tkorobkin@haineslawgroup.com
Sean M. Blakely (SBN 264384)
sblakely@haineslawgroup.com
2274 E. Maple Avenue
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2355

**TOJARIEH LAW FIRM, PC**
Joseph Tojarieh (SBN 265492)
jft@tojariehlaw.com
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Tel: (310) 553-5533
Fax: (310) 553-5536

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LOPEZ and ANGELO VIZCAINO, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>   vs.<br><br>AEROTEK, INC., a Maryland corporation; AVISTA, INCORPROATED, a Wisconsin corporation; KIRKHILL-TA CO.; and DOES 1 through 100, inclusive,<br><br>                Defendants. | Case No. SACV-14-803-CJC-(JCGx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:      Hon. Cormac J. Carney<br>Date:       August 7, 2017<br>Time:       1:30 p.m.<br>Courtroom: 9B<br><br>Action Filed:    April 9, 2014<br>Action Removed: May 22, 2014 |

NOTICE IS HEREBY GIVEN that on August 7, 2017 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 9B of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California 92701, before the Honorable Cormac J. Carney, Plaintiffs Maria Lopez and Angelo Vizcaino ("Plaintiffs"), as individuals and on behalf of all others similarly situated, will and hereby do move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e):

1. Approving the filing of the proposed Fourth Amended Complaint, attached to the Settlement Agreement as Exhibit C;

2. Preliminarily certifying the proposed Settlement Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

3. Preliminarily appointing Plaintiffs as Class Representatives for settlement purposes;

4. Preliminarily appointing Paul K. Haines, Tuvia Korobkin, and Sean M. Blakely of Haines Law Group, APC and Joseph Tojarieh of Tojarieh Law Firm, PC as Class Counsel for settlement purposes;

5. Preliminarily approving the class action settlement based upon the terms set forth in the Class Action Settlement Agreement and Joint Stipulation ("Settlement Agreement");

6. Scheduling a final fairness hearing to consider final approval of the Settlement Agreement, entry of a proposed final judgment, and Class Counsel's Motion for Reasonable Attorney's Fees, Costs, and Class Representatives' Incentive Payments;

7. Appointing CPT Group, Inc., as the third-party settlement administrator for mailing notices; and

8. Approving the proposed Notice Packet and an order that it be disseminated to the proposed Settlement Class as provided in the Settlement Agreement.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1    This motion is based on this notice of motion, the attached memorandum of

2    points and authorities, the declarations of counsel and exhibits attached thereto, the

3    declaration of Julie Green of CPT Group, Inc. and the exhibits attached thereto, the

4    pleadings and other papers filed in this action, and on any further oral or

5    documentary evidence or argument presented at the time of hearing.

6

7                                        Respectfully submitted,

8    Dated:  June 28, 2017               HAINES LAW GROUP, APC

9

10                              By:     _/s/ Paul K. Haines_

11                                      Paul K. Haines, Esq.
                                        Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# TABLE OF CONTENTS

I. INTRODUCTION ...............................................................................1

II. FACTUAL & PROCEDURAL HISTORY .......................................2

    A. The Parties ...............................................................................2

    B. Plaintiffs' Claims .....................................................................3

    C. The *Ramirez* Settlement ..........................................................4

    D. Defendants' Affirmative Defenses ...........................................4

        1. Rounding Claim ..................................................................4

        2. Meal and Rest Period Claims .............................................5

        3. Derivative Claims for Waiting Time Penalties, Wage
           Statement Penalties, and PAGA Civil Penalties ..................6

    E. Relevant Procedural History, Discovery, and Mediation ..........8

III. THE SETTLEMENT MERITS PRELIMINARY APPROVAL.......9

    A. The Settlement Is Fair, Adequate, and Reasonable ..................9

        1. The Strength of Plaintiffs' Case ........................................10

        2. Risk, Expense, and Complexity of Further Litigation .......10

        3. Risk of Maintaining Class Action Status ..........................11

        4. Settlement Amount Provides Realistic Value for Claims.............11

           a. Unpaid Wages Due to Rounding .........................................11

           b. Failure to Provide First Meal Periods.................................12

           c. Failure to Provide Second Meal Periods.............................12

           d. Failure to Authorize and Permit Third Rest Periods ..........13

           e. Waiting Time Penalties: $142,980.......................................14

           f. Wage Statement Penalties: $114,206 .................................15

           g. PAGA Penalties: $109,638 .................................................16

        5. Discovery Completed and the Status of Proceedings ...................17

        6. The Experience and Views of Counsel ...........................................18

    B. The Preliminary Approval Standard Is Met................................18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1. The Settlement is Within the Range of Possible Approval............18

2. The Settlement Resulted from Arm's-Length Negotiations ..........18

3. The Settlement is Devoid of Obvious Deficiencies ......................19

IV. THE SETTLEMENT MERITS CERTIFICATION..........................................23

A. Rule 23(a)(1) Numerosity Is Satisfied .....................................23

B. Rule 23(a)(2) Commonality Is Satisfied ..................................23

C. Rule 23(a)(3) Typicality Is Satisfied .......................................23

D. Rule 23(a)(4) Adequacy Is Satisfied .......................................23

E. Rule 23(b)(3) Predominance Is Satisfied .................................24

V. THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS ............25

VI. CONCLUSION....................................................................................25

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# TABLE OF AUTHORITIES

**Federal Cases**

*Amchem v. Windsor*
        521 U.S. 591, 623 (1997) ...............................................................24

*Churchill Vill., LLC v. Gen. Elec.*
        361 F.3d 566, 575 (9th Cir. 2004) ...................................................25

*Dunleavy v. Nadler*
        213 F.3d 454, 459 (9th Cir. 2000) ...................................................17

*Eisen v. Carlisle & Jacqueline*
        417 U.S. 156 (1974)..........................................................................25

*Franklin v. Kaypro Corp.*
        884 F.2d 1222, 1225 (9th Cir. 1989) .................................................9

*Hanlon v. Chrysler Corp.*
        150 F.3d 1011, 1020 (9th Cir. 1998) .........................................23, 24

*Hurst v. Buczek Enter., LLC*
        870 F.Supp.2d 810, 829 (N.D. Cal. 2012).........................................7

*Ikonen v. Hartz Mountain Corp.*
        122 F.R.D. 258, 262 (S.D. Cal. 1988).............................................23

*In re Bluetooth Headset Prods. Liab. Litig.*
        654 F.3d 935, 942 (9th Cir. 2011) ...................................................22

*In re Pacific Enterprises Sec. Litig.*
        47 F.3d 373, 378 (9th Cir. 1995) .....................................................18

*Leyva v. Medline Indus. Inc.*
        716 F.3d 510, 515 (9th Cir. 2013) ...................................................24

*Lindow v. U.S.*
        738 F.2d 1057 (9th Cir. 1984) ...........................................................5

*National Rural Tele. Coop. v. DIRECTTV, Inc.*
        221 F.R.D. 523, 526 (C.D. Cal. 2004)........................................10, 17

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

*Rodriguez v. West Publishing Corp.*

    563 F.3d 948, 963 (9th Cir. 2003) ..........................................................10, 22

*United States v. Citrin*

    972 F.2d 1044, 1051 (9th Cir.1992) .............................................................15

**State Cases**

*Amaral v. Cintas Corp. No. 2*

    163 Cal.App.4th 1157, 1207 (2008) ......................................................15, 16

*Brinker v. Sup. Ct.*

    53 Cal.4th 1004, 1034-41 (2012) ....................................................................6

*Kirby v. Immoos Fire Protection, Inc.*

    53 Cal.4th 1244 (2012) ...................................................................................7

*Lazar v. Hertz Corp.*

    69 Cal.App.4th 1494, 1505-06 (1999) .........................................................16

*Ling v. P.F. Chang's China Bistro, Inc.*

    245 Cal.App.4th 1242, 1261 (2016) ..............................................................7

*Price v. Starbucks Corp.*

    192 Cal.App.4th 1136, 1147 (2011) ..............................................................7

*See's Candy Shops, Inc. v. Sup. Ct.*

    210 Cal.App.4th 889, 902-03 (2012) .............................................................3

*Thurman v. Bayshore Transit Management, Inc.*

    203 Cal.App.4th 1112, 1135 (2012) .........................................................8, 16

**Federal Statutes and Rules**

29 C.F.R. § 785.48(b) .........................................................................................3

Fed. R. Civ. Proc. 23(e)(2).................................................................................9

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**State Statutes and Rules**

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................................................... 1

Cal. Code Regs. § 13520 ..............................................................................6, 14

Cal. Labor Code § 203 ................................................................................4, 7

Cal. Labor Code § 226 ................................................................................4, 7

Cal. Labor Code § 226(a) ................................................................................15

Cal. Labor Code § 226(e) ........................................................................7, 15, 16

Cal. Labor Code § 2698 *et seq.* ..........................................................................4

Cal. Labor Code § 2699(e)(2) ..................................................................8, 16

Cal. Labor Code § 512(a) ................................................................................6

DLSE Enforcement Manual (2002), § 47.2.1 ..........................................................4


**Unpublished Cases**

*Abbe v. City of San Diego*

  No. 05-cv-1629-DMS (JMA)

  2007 WL 4146696, at *7 (S.D. Cal. Nov. 9, 2007)..................................................5

*Alvarado v. Costco Wholesale Corp.*

  No. C-06-04015-JSW

  2008 WL 2477393 at **3-4 and fn1 (N.D. Cal. June 18, 2008)....................5

*Barbosa v. MediCredit, Inc.*

  No. EDCV 14-00063-VAP(SPx)

  2015 WL 1966911 (C.D. Cal. 2015) ..........................................................22

*Chu v. Wells Fargo Investments, LLC*

  Nos. C 05-4526 MHP, C 06-7924 MHP

  2011 WL 672645 at *1 (N.D. Cal. Feb. 16, 2011)......................................22

*Dalton v. Lee Publ'ns*

  No. 08-cv-1072-BTM(NLS)

  2011 WL 1045107 at *5 (S.D. Cal. Mar. 22, 2011)......................................7

*Fleming v. Covidien, Inc.*
  No. ED-cv-10-01487-RGK(OPx)
  2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) ................................8, 16
*Franco v. Ruiz Food Prods. Inc.*
  No. 1:10-cv-02354-SKO
  2012 WL 5941801 (E.D. Cal. 2012) ............................................................22
*Green v. Lawrence Service Co*
  2013 WL 3907506, *5, fn. 5 (C.D. Cal. 2013)............................................16
*Gribble v. Cool Transports Inc*
  No. CV-06-04863-GAF(SHx)
  2008 WL 5281665 at *9 (C.D. Cal. Dec. 15, 2008)....................................18
*Harris v. Vector Mktg. Corp.*
  No. C-08-5198 EMC
  2012 WL 381202 at *7 (N.D. Cal. Feb. 6, 2012).........................................22
*In re First Capital Holdings Corp. Finan. Prods.*
  MDL No. 901
  1992 WL 226321 at *2 (C.D. Cal. June 10, 1992).......................................19
*In re Portal Software, Inc. Sec. Litig.*
  No. C-03-5138-VRW
  2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) ....................................11
*Kao v. Joy Holiday*
  --- Cal.Rptr.3d ---
  2017 WL 2590653 at *8 (Cal. Ct. of Appeal, June 15, 2017)........................7
*Lazarin v. Pro Unlimited, Inc.*
  No. C11-03609 HRL
  2013 WL 3541217 (N.D. Cal. July 11, 2013) .............................................22

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

*Moppin v. Los Robles Regional Med'l Ctr.*
    No. EDCV 15-1551 JGB(DTBx)
    2016 WL 7479380 (C.D. Cal. Sept. 12, 2016) (Bernal, J.) .........................17
*Ramirez v. Kirkhill-TA Co.*
    Los Angeles Superior Court Case No. BC557207 ....................................1, 4
*Schiller v. David's Bridal, Inc.*
    No. 1:10-cv-00616-AWI-SKO
    2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) .................................21
*Sorenson v. PetSmart, Inc.*
    Case No. 2:06-CV-02674-JAM-DAD
    (E.D. Cal. December 17, 2008) ..................................................................21
*Viceral v. Mistras Grp., Inc.*
    No. 15-cv-02198-EMC
    2016 WL 5907869 (N.D. Cal. 2016)...........................................................17
*Williams v. Centerplate, Inc.*
    No. 11-cv-2159-H-KSC
    2013 WL 4525428 at *4 (S.D. Cal. Aug. 26, 2013)....................................21

**Other Sources**

*Manual for Complex Litigation* § 30.41 (3rd Ed. 1995)....................................9, 18
*Newberg on Class Actions* § 11:24-25 (4th ed. 2013) ...........................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Maria Lopez and Angelo Vizcaino ("Plaintiffs"), individually and on behalf of the proposed Settlement Class, request that this Court preliminarily approve the Class Action Settlement Agreement and Joint Stipulation ("Settlement Agreement") entered into by Plaintiffs and Defendants Aerotek, Inc. ("Aerotek") and Kirkhill-TA Co. ("Kirkhill") (collectively, "Defendants").[1]

In their lawsuit, Plaintiffs seek unpaid minimum and overtime wages under federal and California law, meal and rest period premium wages, and derivative statutory and civil penalties.[2]  Plaintiffs' claims stem from Defendants' allegedly unlawful time clock rounding practices and alleged failure to provide legally compliant meal and rest periods.

Under the Settlement Agreement, Defendants have agreed to pay a non-reversionary Common Fund of $650,000.00 to resolve Plaintiffs' claims on behalf of the proposed Settlement Class, which is defined as "all non-exempt, hourly production employees who were employed by Kirkhill in California at any time from July 20, 2015[3] through the date of preliminary approval, and all non-exempt hourly employees of Aerotek who worked at the Kirkhill Facility [in Brea, CA] at any time from April 9, 2010 through the date of preliminary approval, who do not timely opt-out of the proposed settlement."

According to Defendants' records, the proposed Settlement Class consists of approximately 2,084 Settlement Class members.  Significantly, Settlement Class

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Paul K. Haines. The proposed Class Notice and Notice of Settlement Award are attached as Exhibits A and B, respectively, to the Settlement Agreement.

[2] There are nine claims pled in the proposed Fourth Amended Complaint: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Compensation; (3) Violation of the Fair Labor Standards Act ("FLSA"); (4) Meal Period Violations; (5) Rest Period Violations; (6) Wage Statement Penalties; (7) Waiting Time Penalties; (8) Civil Penalties under the Private Attorneys General Act ("PAGA"); and (9) Unfair Competition (Bus. & Prof. Code § 17200 *et seq.*).

[3] As explained *infra*, a settlement in *Ramirez v. Kirkhill-TA Co.*, Los Angeles Superior Court Case No. BC557207, resolved Plaintiffs' class claims against Kirkhill through July 19, 2015.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

members will not need to submit a claim form in order to receive a settlement payment, and no Settlement funds will revert to Defendants.

This proposed settlement came to fruition only after robust legal research and analysis, extensive investigation, the exchange and analysis of a significant amount of relevant data, and extensive arm's-length settlement negotiations at two separate private mediations with Jeffrey L. Krivis, an experienced and well-regarded wage and hour class action mediator.

As stated, if the Settlement is approved, Defendants will pay a Common Fund of $650,000.00. After deductions for court-approved incentive payments to the named Plaintiffs, settlement administration costs, attorneys' fees and costs, and payment to the Labor & Workforce Development Agency ("LWDA") for civil penalties under the Labor Code Private Attorneys General Act ("PAGA"), the Net Common Fund shall be distributed to all Settlement Class members, based on their number of Qualifying Shifts worked during the relevant time periods.

This settlement provides a substantial recovery on Defendants' alleged wage and hour violations and disputed derivative penalty claims. Based on the litigation risks involved, Plaintiffs submit that the proposed settlement is well within the range of possible approval. Moreover, the settlement agreement and notice distribution plan are the products of an informed and thoroughly-vetted analysis of the claims and defenses, as well as the likelihood of obtaining class certification, and arm's-length settlement negotiations by experienced employment counsel.

## II. FACTUAL & PROCEDURAL HISTORY

### A. The Parties

Aerotek is a leading staffing agency headquartered in Hanover, MD, and focuses on technical, professional, and industrial staffing. Kirkhill is a specialized manufacturing company headquartered in Brea, CA that principally serves the aerospace and defense industries. Kirkhill employs many of its workers directly, but it also utilizes Aerotek's staffing services to supply much of its workforce.

2

1    Plaintiff Lopez worked for Aerotek and was sent to work at Kirkhill's
2  California facility in Brea, CA (the "Kirkhill Facility"), where she worked as a
3  non-exempt hand builder on Kirkhill's production line during the relevant time
4  period.  Plaintiff Vizcaino also worked for Aerotek during the relevant time period
5  and was assigned to the Kirkhill Facility as a non-exempt machine operator.  In or
6  about December 2014, Mr. Vizcaino was hired directly by Kirkhill and then
7  performed non-exempt laboratory work for Kirkhill.

8    All Settlement Class members worked at the Kirkhill Facility, either placed
9  there through Aerotek or employed directly by Kirkhill.  Plaintiffs allege that
10  Aerotek and Kirkhill were "joint employers" for purposes of liability for the wage
11  and hour violations alleged in this lawsuit.

12    **B.    Plaintiffs' Claims**

13    Plaintiffs claim that during the relevant time periods, Defendants engaged in
14  unlawful rounding of employee time entries, resulting over time in a systematic
15  underpayment of wages under California and federal law.  *See* 29 C.F.R. §
16  785.48(b); *See's Candy Shops, Inc. v. Sup. Ct.*, 210 Cal.App.4th 889, 902-03
17  (2012) (holding that, consistent with federal law, California law allows rounding of
18  time entries but only "provided that it is used in such a manner that it will not
19  result, over a period of time, in failure to compensate the employees properly for
20  all the time they have actually worked.").

21    Plaintiffs also allege that Defendants did not provide non-exempt employees
22  all statutorily-mandated meal periods, and failed to authorize and permit third rest
23  periods on shifts of over 10.0 hours.  Specifically, Plaintiffs allege that Kirkhill
24  sounded a bell at exactly 4 hours into the shift, and another bell at exactly 30
25  minutes later, and that employees were required to return to their work stations
26  ready to work before the second bell rang, depriving them of a full 30-minute meal
27  period. Plaintiffs also allege that Kirkhill's meal and rest period policy did not
28  provide for second meal periods or third rest periods on shifts of over 10.0 hours.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

As a result of these alleged violations, Plaintiffs maintain that Defendants failed to comply with their final payment and wage statement obligations, in violation of Labor Code §§ 203 and 226, respectively.  Plaintiffs also seek civil penalties under the PAGA, Labor Code § 2698 *et seq.*

### C.    The *Ramirez* Settlement

In 2015, Kirkhill reach a class-wide settlement with workers directly employed by Kirkhill, in the case of *Ramirez v. Kirkhill-TA Co.*, Los Angeles Superior Court Case No. BC557207, and which resolved all of Plaintiffs' claims on a class-wide basis with respect to Kirkhill through July 19, 2015.  Accordingly, the class period for Settlement Class members employed directly by Kirkhill begins on July 20, 2015.

In addition, Kirkhill asserts (and Plaintiffs' investigation confirmed) that Kirkhill changed its meal and rest periods policies and practices after the *Ramirez* settlement so that they comply with California law.  Accordingly, Plaintiffs' meal and rest period damages analyses focus on workers employed by Aerotek (not directly by Kirkhill), pre-July 20, 2015.  *See* Declaration of Paul K. Haines ("Haines Decl."), ¶ 11.

### D.    Defendants' Affirmative Defenses

#### 1.    Rounding Claim

Defendants maintain that Kirkhill's rounding policies are both facially neutral and even-handed in practice, and that, over time, they do not deprive employees of compensation for time worked.  Indeed, Defendants point to the fact that for many employees, Defendants' rounding policies resulted in those employees being *overpaid.* Defendants also maintain that even for those employees who were underpaid as a result of rounding, the average underpayment was less than 10 minutes per shift, and was thus *de minimis* and would not result in liability.  *See* DLSE Enforcement Manual (2002), § 47.2.1 ("This [*de minimis*] rule applies only where there are uncertain and indefinite periods of time involved of a few

seconds or minutes duration…" (citing *Lindow v. U.S.*, 738 F.2d 1057 (9th Cir. 1984)).  Courts have held that daily periods of up to 10 minutes are *de minimis*. *Lindow*, 738 F.2d at 1062 (collecting cases); *see also Alvarado v. Costco Wholesale Corp.*, No. C-06-04015-JSW, 2008 WL 2477393 at **3-4 and fn1 (N.D. Cal. June 18, 2008) (holding that plaintiff was not entitled to compensation for time spent waiting for security checks at end of shifts because the "several minutes" that plaintiff had to wait was *de minimis*); *Abbe v. City of San Diego*, No. 05-cv-1629-DMS (JMA), 2007 WL 4146696, at *7 (S.D. Cal. Nov. 9, 2007) ("Here, it is undisputed that donning and doffing protective gear…takes less than 10 minutes.…Therefore, time spent donning and doffing safety gear is *de minimis* and non-compensable as a matter of law.").  Defendants also maintain that Plaintiffs' rounding theory would not be certified, since some employees were overpaid as a result of the rounding policy and others were underpaid.

## 2.   Meal and Rest Period Claims

As stated, Plaintiffs' meal and rest period claims focus on Aerotek employees, pre-July 20, 2015.  Aerotek contends it has always maintained facially lawful meal and rest period policies, and has always provided all meal periods, and authorized and permitted all rest periods, required by California law.  Aerotek points to its own, separate meal and rest period policies that it claims are facially more compliant than Kirkhill's, and which it claims were enforced by Aerotek personnel who supervised Aerotek workers at the Kirkhill Facility.  Moreover, an analysis of the time records provided in connection with mediation showed that Aerotek employees took compliant *first* meal periods on between 75% and 96% of shifts[4] during the relevant time period. Indeed, due to the high compliance rate, Plaintiffs did not anticipate a realistic recovery on their first meal period claim.

---

[4] As explained *infra*, over 75% of shifts reflected meal periods of at least 30 minutes commencing before the end of the fifth hour. Over 96% of shifts reflected meal periods of at least 25 minutes commencing within 5 minutes of the end of the fifth hour (i.e., *de minimis* violations).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

With respect to second meal periods and third rest periods on shifts of more than 10.0 hours, Defendants maintain that their obligation is simply to "provide" meal periods and to "authorize and permit" third rest periods, not to "ensure" that they are taken. *See Brinker v. Sup. Ct.*, 53 Cal.4th 1004, 1034-41 (2012) (rejecting "ensure" standard). Furthermore, Defendants contend that any failure to take second meal periods or third rest periods was a result of employee choice, not of any policy or practice of Defendants. Defendants also point to the fact that second meal periods may be waived if the first meal period is taken and if the total work time is no more than 12.0 hours (*see* Labor Code § 512(a)), and given that the vast majority of first meal periods were taken (see *supra*), and that there were relatively few shifts of more than 12.0 hours, any missed second meal periods were the result of lawful employee waiver. Indeed, Aerotek produced written second meal period waivers that were signed by both Plaintiffs and that Aerotek asserted were also signed by the majority of its employees. Moreover, as stated above, Aerotek asserts that it maintained its own compliant meal period policies prior to July 20, 2015, and that Aerotek employees at Kirkhill were supervised by Aerotek employees, who implemented and enforced Aerotek's compliant meal period policies. Finally, Defendants assert that Plaintiffs' second meal period and third rest period claims would not be amenable to class treatment, since individual inquiries would need to be made with respect to each specific shift that each employee missed a meal or rest period, to determine why that specific employee missed that specific meal or rest period on that specific shift.

### 3. Derivative Claims for Waiting Time Penalties, Wage Statement Penalties, and PAGA Civil Penalties

With respect to Plaintiffs' waiting time penalties claim, Defendants argue that their good-faith belief in the legality of their employment practices precludes a finding that any withholding of wages was "willful." *See* Cal. Code Regs. § 13520 (good-faith dispute exists to a claim for waiting time penalties "when an

employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."); *see also Kao v. Joy Holiday*, --- Cal.Rptr.3d ---, 2017 WL 2590653 at *8 (Cal. Ct. of Appeal, June 15, 2017) (precluding waiting time penalties where good-faith dispute existed over entitlement to wages, and holding that "[w]aiting time penalties are properly limited to the *uncontested* wages due at the time of Kao's termination") (emphasis added).  Defendants further contend that Plaintiffs' meal and rest period claims cannot support a claim for waiting time penalties under Labor Code § 203 after the California Supreme Court's decision in *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244 (2012), which held that meal and rest period claims are not actions for the "nonpayment of wages." Indeed, the California Court of Appeal held last year that "[f]ollowing *Kirby*, section 226.7 cannot support a section 203 penalty because [§ 203(b)] tethers the waiting time penalty to a separate action for wages."  *Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal.App.4th 1242, 1261 (2016).

Defendants likewise argue that their alleged wage statement violations could not be shown to be "knowing and intentional" as required by Labor Code § 226(e) for imposition of penalties.  *See, e.g., Hurst v. Buczek Enter., LLC*, 870 F.Supp.2d 810, 829 (N.D. Cal. 2012) ("when a party makes a good faith claim that a worker [has been properly classified], its failure to provide accurate wage statements is not knowing and intentional."); *Dalton v. Lee Publ'ns,* No. 08-cv-1072-BTM(NLS), 2011 WL 1045107 at *5 (S.D. Cal. Mar. 22, 2011) (holding that good faith dispute precludes finding that defendant acted "with the requisite scienter" under Labor Code § 226).

Defendants also deny liability under PAGA because they contend Plaintiffs' underlying claims are meritless.  *See, e.g., Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the

derivative UCL and PAGA claims also fail.").  Defendants further contend that
even if liability were established, this Court would utilize its discretion to severely
reduce any PAGA penalties awarded.  *See* Labor Code § 2699(e)(2) (granting
courts discretion to award "a lesser amount" than the full penalty "based on the
facts and circumstances of the particular case"); *see also Thurman v. Bayshore
Transit Management, Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming
reduction of PAGA penalties); *Fleming v. Covidien, Inc.*, No. ED-cv-10-01487-
RGK(OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA
penalties from $2.8 million to $500,000).

### E.   Relevant Procedural History, Discovery, and Mediation

On April 9, 2014, Plaintiffs filed their class and representative action
complaint in Orange County Superior Court, originally against Aerotek and Avista,
Inc.  Aerotek removed the action to this Court on May 22, 2014.  [Dkt. No. 1.]

In January 2015, the parties attended an early private mediation with Jeffrey
L. Krivis, Esq.  Although the parties engaged in a full day of mediation and
significant post-mediation settlement discussions, the early mediation ultimately
was unsuccessful.  After multiple procedural and substantive motions, including
multiple motions to dismiss and an unsuccessful motion to remand, Plaintiffs filed
their First Amended Complaint [Dkt. No. 62] on August 14, 2015.

On November 5, 2015, Plaintiffs filed their Second Amended Complaint
[Dkt. No. 70].  After further motion practice, include Aerotek's and Avista's
motions to dismiss that were both granted in part, on July 8, 2016 Plaintiffs filed
their operative Third Amended Complaint [Dkt. No. 90], which dismissed Avista
and added Kirkhill as a defendant.  The parties subsequently agreed to attend a
second private mediation with Mr. Krivis.

In preparation for mediation, Defendants provided Plaintiffs' counsel with
timekeeping and payroll records for a sample of the putative class, and also
provided several key pieces of data for the entire putative class, including the

number of class members, total workweeks worked by class members, and other relevant data necessary to evaluate the claims on a class-wide basis.  Defendants also provided its written policies regarding the challenged wage and hour practices at issue in the lawsuit.  *See* Haines Decl., ¶ 12.  Plaintiffs retained an economist with a Ph.D. to analyze all of the data produced by Defendants and to assist in creating damages exposure analyses.  *Id*.

The parties attended mediation with Mr. Krivis on February 9, 2017.  Haines Decl., ¶ 13.  After a full day of negotiations, Mr. Krivis made a mediator's proposal for a class-wide resolution, which all parties accepted.  *Id.*  The parties subsequently executed a binding Memorandum of Understanding outlining the essential terms of the settlement.  *Id.*  Over the next several months, the parties negotiated and drafted the long-form Settlement Agreement, which was executed in June 2017 and is now before this Court for preliminary approval.  *Id.*

## III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

It is the policy of the federal courts to encourage settlement. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).  Judicial approval of a class action settlement entails a two-step process: (1) an early (preliminary) review by the Court; and (2) a final review after notice has been distributed to the class members for their comment or objections. *See* Manual for Complex Litigation § 30.41 (3rd Ed. 1995).

### A.   The Settlement Is Fair, Adequate, and Reasonable

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2).  In making this determination, this Court may consider the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

governmental participant; and (8) the reaction of the class members to the proposed settlement (which is to be evaluated at the final approval hearing, after the class members have received notice). *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2003).  Plaintiffs address each relevant factor below.

### 1.   The Strength of Plaintiffs' Case

Although they steadfastly maintain that their claims are meritorious, Plaintiffs acknowledge that Defendants possessed several defenses to both liability and class certification, such that prevailing on either was uncertain.  Haines Decl., ¶ 14.  As explained in Section II.D. *supra*, Defendants presented multiple defenses to each of Plaintiffs' underlying claims, both on the merits and with respect to class certification.  As a result, Plaintiffs' ability to certify and prevail on their claims was far from guaranteed.  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted).  Thus, this factor supports preliminary approval.

### 2.   Risk, Expense, and Complexity of Further Litigation

Although the parties had engaged in a significant amount of investigation, informal discovery, and class-wide data analysis, the parties had not yet completed formal written or deposition discovery. *See* Haines Decl., ¶ 15.  Plaintiffs intended to depose Defendants' F.R.C.P. 30(b)(6) witnesses on all topics related to Defendants' timekeeping policies and their meal and rest period policies and practices.  *Id.*  Defendants likewise planned to depose each Plaintiff, and to move for summary adjudication on all or some of the claims.  *Id.*  Moreover, preparation for class certification and a trial remained for the parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiffs and/or adverse summary judgment ruling.  *Id.*  As a result, the parties would incur considerably more attorneys' fees and costs through trial.  This settlement avoids

those risks and the accompanying expense. *See, e.g., In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138-VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors preliminary approval.

### 3.     Risk of Maintaining Class Action Status

Plaintiffs had not yet filed their motion for class certification when the parties reached the proposed settlement. Haines Decl., ¶ 16. Absent settlement, there was a risk that there would not be a certified class at the time of trial, and that the putative class members would not recover anything. *Id.* As discussed herein, Plaintiffs believe there was substantial risk with certifying all of the proposed classes. Thus, this factor also supports preliminary approval.

### 4.     Settlement Amount Provides Realistic Value for Claims

This proposed settlement provides a substantial monetary recovery for Settlement Class members in face of disputed claims. As detailed below, Plaintiffs believe this settlement represents a recovery of more than 80% of the projected expected recovery if this case were to proceed through certification and trial.

#### a.   Unpaid Wages Due to Rounding:  **$162,653**

Plaintiffs' data analysis revealed that Defendants' rounding policy caused Settlement Class members to be underpaid by approximately 42,000 hours on those shifts where rounding resulted in underpayment, and that Settlement Class members' average rate of pay was approximately $9.93 per hour over the relevant time period, resulting in $417,060 in unpaid wages as a result of Defendants' allegedly illegal rounding policies. Haines Decl., ¶ 17. As noted above, however, Defendants presented multiple defenses to this claim, including the fact that the rounding policy is facially neutral, that many employees were *overpaid* as a result of the rounding policy, and that any underpayment was *de minimis* when viewed on a daily basis. *Id.* Defendants also maintained that Plaintiffs could not certify this claim due to differences in how employees were affected by the policy (i.e.,

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

some were overpaid while others were underpaid). *Id.* Plaintiffs therefore discounted the calculated exposure by 35% for risk of non-certification, and an additional 40% for risk of losing on the merits and/or not recovering the full amount of damages sought, to arrive at an estimated exposure of $162,653. *Id.*

### b. Failure to Provide First Meal Periods: No Value

As discussed above, Defendants maintain that they have always provided first meal periods to Settlement Class members, and that they have always maintained, and enforced, facially compliant first meal period policies. Haines Decl., ¶ 18. Plaintiffs' expert analyzed the time records produced in connection with mediation, which reflected that putative class members took timely (i.e. commencing before the end of the fifth hour of work), 30-minute meal periods on more than 75% of shifts during the relevant time period. *Id.* In addition, when accounting for meal periods that began only slightly after the end of the fifth hour (i.e., no more than 5 minutes after the end of the fifth hour) and that lasted at least 25 minutes, the compliance rate rose to more than 96%. *Id.* Defendants contend that this is proof that their meal period practices resulted, at the worst, in a few sporadic *de minimis* meal period violations, and that this claim would not be certifiable given the extremely low violation rate. *Id.* Given that Kirkhill's meal period policy, even pre-July 2015, was facially compliant with respect to first meal periods (i.e., providing duty-free meal periods beginning no later than the end of the fifth hour of work), and that the time records reflect a high first meal period compliance rate, Plaintiffs did not anticipate a realistic recovery on their first meal period claim and assigned it zero value. *Id.*

### c. Failure to Provide Second Meal Periods: **$194,141**

With respect to second meal periods, Plaintiffs' analysis of the pre-July 20, 2015 timekeeping records of Aerotek employees placed at Kirkhill[5] reflected a

---

[5] As stated above, the *Ramirez* settlement extinguished Kirkhill's liability pre-July 20, 2015, and Kirkhill's meal period policies/practices were amended after the *Ramirez* settlement. Thus,

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

total of 54,688 shifts in excess of 10.0 hours, in which a second meal period would need to have been provided. See Haines Decl., ¶ 19.  As stated, Plaintiffs' analysis also revealed that Settlement Class members' average rate of pay during the relevant time period was approximately $9.93, resulting in a total of $543,052 in potential meal period premium wages under Labor Code § 226.7, assuming a 100% violation rate for those shifts.  *Id.*  However, and as explained *supra*, Defendants presented multiple defenses to this claim both on the merits and with respect to class certification, including their argument that second meal periods were lawfully waived under Labor Code § 512(a) because first meal periods were always provided and employees signed written second meal period waivers; that Aerotek workers were supervised separately by Aerotek supervisors, and that Aerotek's meal period policy was facially compliant; that any failure to take a second meal period was the result of employee choice and not due to any policy or practice of Defendants; and that this claim is inherently unsuitable for class certification given that individualized issues would predominate with respect to why a particular employee missed a specific meal period on a specific shift.  *Id.*  Accordingly, Plaintiffs discounted the calculated exposure by 35% for risk of non-certification, and an additional 45% for risk of losing on the merits and/or not recovering the full amount of damages sought, to arrive at an estimated exposure of $194,141.  *Id.*

> d. <u>Failure to Authorize and Permit Third Rest Periods</u>: **$81,458**

As stated above, Plaintiffs' data analysis reflected approximately 54,688 shifts in excess of 10.0 hours in which a third rest period would need to be authorized and permitted, and an average hourly rate of $9.93, resulting in a total of $543,052 in potential rest period premium wages under Labor Code § 226.7.  Haines Decl., ¶ 20.  However, as explained *supra*, Defendants presented multiple

Plaintiffs' meal period analysis focused only on Aerotek employees who were placed at Kirkhill prior to July 20, 2015.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

defenses to this claim both on the merits and with respect to class certification, including their argument that Kirkhill and Aerotek's rest period policies were facially lawful, as they authorized and permitted a rest period for every four hours worked or major fraction thereof; that Aerotek workers were supervised separately by Aerotek supervisors, and that Aerotek's rest period policy was facially compliant; that any failure to take a third rest period was the result of employee choice and not due to any policy or practice of Defendants; and that this claim is inherently unsuitable for class certification given that individualized issues would predominate with respect to why a particular employee missed a specific rest period on a specific shift.  Plaintiffs' rest period claim is particularly unlikely to be certified, Defendants argued, because rest periods are not recorded, thereby requiring individualized inquiries into whether someone missed a third rest break and the reasons the break was missed.  Accordingly, Plaintiffs discounted the calculated exposure by 70% for risk of non-certification, and an additional 50% for risk of losing on the merits and/or not recovering the full amount of damages sought, to arrive at an estimated exposure of $81,458.  *Id.*

### e.  Waiting Time Penalties: **$142,980**

Defendants' records reflected approximately 800 former non-exempt employees among Settlement Class members who separated their employment with Kirkhill since July 20, 2015, or separated their employment with Aerotek since April 9, 2011.  *See* Haines Decl., ¶ 21.  Based on an hourly rate of pay of $9.93, Plaintiffs estimated the average waiting time penalty per former employee to be $2,383 ($9.93 * 8 hours * 30 days).  *Id*.  Therefore, Plaintiffs estimated Defendants' potential waiting time penalty exposure as follows: 800 former employees * $2,383 = $1,906,400.  *Id*.  As discussed above, however, Defendants presented several defenses to this claim, most notably their assertion that because they possessed good-faith defenses to the underlying claims, any failure to pay wages was not "willful" as a matter of law, pursuant to Cal. Code Regs. § 13520

and the *Kao* decision cited above.  Haines Decl., ¶ 21.  Defendants also asserted that meal and rest period violations could not serve as the basis for a claim for waiting time penalties, per the *Kirby* and *Ling* decisions.  Moreover, to the extent that waiting time penalties were being sought in connection with Defendants' allegedly unlawful rounding practices, Defendants contend that such penalties are unconstitutional, as they would be over four times the amount of unpaid wages.  *See United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir.1992) ("'the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'") (internal quotations omitted).  Defendants also contended that the claim for waiting time penalties would fail for all of the reasons Plaintiffs' underlying claims would fail, as described above.  Haines Decl., ¶ 21.  Therefore, Plaintiffs discounted the calculated exposure by 50% for risk of non-certification, and an additional 85% for risk of losing on the merits and/or not recovering the maximal penalties sought, to arrive at an estimated exposure of $142,980.  *Id.*

## f.  Wage Statement Penalties: **$114,206**

Plaintiffs' data analysis reflected that there have been approximately 18,273 wage statements issued to Settlement Class members during statute of limitations period corresponding with Cal. Labor Code § 226(a). *See* Haines Decl., ¶ 22.  In calculating Defendants' exposure, Plaintiffs gave Defendants the benefit of assuming that Plaintiffs could only obtain the initial wage statement violation of $50 per each violation, for a total of $913,650 in potential wage statement penalties.  *Id.*; *see also* Cal. Labor Code § 226(e) (providing for $50 penalty for "initial" violations); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1207 (2008) (finding that the "initial" violation rate applies until the employer has been notified that it is violating a Labor Code provision).  As noted, Defendants presented several defenses to this claim, including their argument that no violations occurred, and that any alleged violations were not "knowing and intentional" as

required by § 226(e), which would preclude the imposition of any penalties. Moreover, Defendants maintained that Plaintiffs' derivative claim for wage statement penalties would fail for the same reasons that Plaintiffs' underlying claims would fail.  Accordingly, discounted the calculated exposure by 50% for risk of non-certification, and an additional 75% for risk of losing on the merits, to arrive at an estimated exposure of $114,206.  Haines Decl., ¶ 22.

g.  PAGA Penalties: **$109,638**

Plaintiffs estimated a total PAGA exposure of $1,827,300, calculated from 18,273 initial violations at $100 each.  Haines Decl., ¶ 23; *see also Amaral, supra*, 163 Cal.App.4th at 1209. As noted, these penalties derived from the underlying violations discussed herein, each of which Defendants vigorously dispute.[6]  *See, e.g.*, *Green v. Lawrence Service Co.* 2013 WL 3907506, *5, fn. 5 (C.D. Cal. 2013) (explaining that a PAGA claim's success is determined by the merits of its underlying claims).  Moreover, as explained above, the PAGA specifically grants courts the power to reduce PAGA penalties in the court's discretion (Cal. Labor Code § 2699(e)(2)), and Defendants contended that the Court would award a significantly lower amount if Plaintiffs prevailed at trial.  Haines Decl., ¶ 23; *see also Fleming v. Covidien, supra,* 2011 WL 7563047 at *4 (reducing PAGA penalties from $2.8 million to $500,000); *Thurman v. Bayshore*, *supra*, 203 Cal.App.4th at 1135 (affirming trial court's finding that awarding maximum PAGA penalties would be unjust).  Plaintiffs therefore discounted the calculated exposure by 60% for risk of losing on the merits, and by an additional 85% for risk of being awarded a lesser penalty, to arrive at an estimated exposure of $109,638.

Using these estimated figures, Plaintiffs estimated that their total projected recovery would be approximately **$805,076**.  Haines Decl., ¶ 24.  Thus, the

---

[6] Defendants asserted a similar argument with respect to Plaintiffs' unfair competition claim. *See, e.g.*, *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505-06 (1999) (underlying misconduct must be unlawful in order to state a valid claim for relief under the UCL).

proposed settlement amount of $650,000 represents more than 80% of reasonably recoverable potential damages. *Id*. The percentage of liability exposure recovered in this case exceeds percentages routinely approved by courts. *See*, *e.g.*, *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. 2016) (approving wage and hour class action settlement amounting to 8.1% of potential damages); *Dunleavy v. Nadler*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement which represented "roughly one-sixth of the potential recovery"); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial"); *see also Moppin v. Los Robles Regional Med'l Ctr.*, No. EDCV 15-1551 JGB(DTBx), 2016 WL 7479380 (C.D. Cal. Sept. 12, 2016) (Bernal, J.) (preliminarily approving wage and hour settlement amounting to 60.4% of projected recovery after discounting for risks of non-certification and losing on the merits). Given the litigation risks involved, the proposed settlement is well within the realm of being fair, reasonable, and adequate.

### 5. Discovery Completed and the Status of Proceedings

The parties engaged in a significant amount of investigation, informal class-wide discovery, and analysis prior to reaching the proposed settlement. *See* Haines Decl., ¶¶ 12, 17-24. As stated, Defendants provided a sampling of Settlement Class members' time and pay records, and provided detailed data regarding total Settlement Class members, total shifts worked, all applicable policies, and other relevant data for the class. *Id.*, ¶ 12. Plaintiffs had the payroll and timekeeping data statistically analyzed by a third-party expert with a Ph.D in economics. *Id.* It was only after this exchange of data and information that the parties participated in a full-day mediation and ultimately reached the proposed settlement by way of a mediator's proposal. *Id.*, ¶ 13. Thus, this factor supports preliminary approval. ///

### 6.    The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiffs are represented by experienced wage and hour class action counsel who collectively have more than two decades of wage and hour class action experience, and who have successfully served as lead counsel in certifying and settling numerous class actions both in the federal and state courts of California. *See* Haines Decl., ¶¶ 3-7; Korobkin Decl., ¶¶ 2-4; Blakely Decl., ¶¶ 2-4; Tojarieh Decl., ¶¶ 1-8.  This factor supports preliminary approval. *See, e.g., Gribble v. Cool Transports Inc.*, No. CV-06-04863-GAF(SHx), 2008 WL 5281665 at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.")

### B.    The Preliminary Approval Standard Is Met

The Court can grant preliminary approval of the settlement and direct that notice be given if the proposed settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed, and non-collusive negotiations; and (3) has no obvious deficiencies. *See Manual for Complex Litigation* (3d ed. 1995) at § 30.41; Newberg et al., *Newberg on Class Actions* (4th ed. 2013) at § 11:24-25.  These criteria are met here.

### 1.    The Settlement is Within the Range of Possible Approval

The proposed settlement reflects a substantial recovery in light of real litigation risks on both merits and certification.  Plaintiffs submit that the proposed settlement is within the range of possible approval, such that notice should be provided to the Settlement Class so that they can consider the settlement. The Court will have the opportunity to again assess the reasonableness of the settlement after the Settlement Classes have had the opportunity to opt-out or object.
///

## 2.     The Settlement Resulted from Arm's-Length Negotiations

This proposed settlement is the result of extensive arm's-length negotiations by counsel and is, therefore, entitled to an initial presumption of fairness. *See In re First Capital Holdings Corp. Finan. Prods.*, MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length.").

As discussed above, Plaintiffs thoroughly vetted the claims at issue, conducted factual investigation and extensive legal research and analysis, and retained an expert with a Ph.D. in economics to conduct a statistical analysis of the data to arrive at an estimated damages model. *See* Haines Decl., ¶¶ 12, 17-24.  The parties reached this settlement only after mediating with Jeffrey L. Krivis, a well-respected mediator with extensive experience in mediating wage and hour class actions.  *Id.*, ¶ 13.  The parties each supplied Mr. Krivis with detailed mediation briefs outlining their views of the strengths and weaknesses of each claim and defense.  *Id.*  As noted, the parties mutually accepted Mr. Krivis' mediator's proposal, which reflected what the mediator determined to be the fair settlement value of the case.  *Id.*  Even after the parties had come to an initial agreement, both sides continued to negotiate the finer points of the proposed settlement for several months while drafting the long-form settlement agreement.  *Id.*

## 3.     The Settlement is Devoid of Obvious Deficiencies

If the Court preliminarily approves this settlement, Defendants will pay a Common Fund of $650,000, which shall be distributed to the Settlement Class on a non-reversionary basis.  Moreover, no Settlement Class member will be required to submit a claim form to receive his or her Settlement payment.  The principal terms of the proposed settlement agreement are summarized below:

*///*

*///*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

| | |
|---|---|
| Common Fund: | $650,000 |
| Minus Court-approved attorney's fees (25%): | $162,500 |
| Minus Court-approved costs (up to): | $25,000 |
| Minus Court-approved incentive payments: | $10,000 |
| Minus PAGA payment to LWDA: | $25,000 |
| Minus settlement administration costs: | $30,000 |
| Net Common Fund: | **$397,500** |

After deducting amounts for court-approved Plaintiffs' incentive payments, costs of settlement administration, approved attorneys' fees and costs, and the PAGA payment to the LWDA, the settlement requires Defendants to pay a Net Common Fund of **$397,500** to the Settlement Class. Haines Decl., ¶ 25.

$8,333.33 of the Common Fund will be allocated as the "PAGA Payment," which will be distributed to Settlement Class members who worked for Kirkhill at any time from July 20, 2015 to the date of preliminary approval and/or for Aerotek at any time from April 9, 2013 to the date of preliminary approval, based on their proportionate number of Qualifying Shifts worked during those time periods. *See* Settlement, ¶ 26(d).  The remaining portion of the Net Common Fund (estimated at $389,166.67) will be allocated as follows:

(i)     80% of the remaining Net Common Fund will be designated the "Pay Fund," which will be distributed to all Settlement Class members based on their proportionate number of Qualifying Shifts worked (a) for Kirkhill from July 20, 2015 to the date of preliminary approval and/or (b) for Aerotek from April 9, 2010 to the date of preliminary approval. *See* Settlement, ¶ 26(a).

(ii)     10% of the remaining Net Common Fund will be designated the "Waiting Time Fund," which will be distributed in equal amounts to all Settlement Class members whose employment with Aerotek ended at any time from April 9, 2011 to the date of preliminary approval, or

whose employment with Kirkhill ended at any time from July 20, 2015 to the date of preliminary approval. *See* Settlement, ¶ 26(b).

(iii)   The final 10% of the remaining Net Common Fund will be designated the "Wage Statement Fund," which will be distributed to Settlement Class members who worked for Kirkhill at any time from July 20, 2015 to the date of preliminary approval and/or for Aerotek at any time from April 9, 2013 to the date of preliminary approval, based on their proportionate number of Qualifying Shifts worked during those time periods.  *See* Settlement, ¶ 26(c).

The average payment to Settlement Class members is estimated at $190.74. Haines Decl., ¶ 25. This figure will vary depending on number of Qualifying Shifts worked by each Settlement Class member during the relevant time periods, and whether or not they are a former employee eligible for a payment from the Waiting Time Fund.  *Id.*  In other words, the Settlement payments are calculated so as to compensate Settlement Class members commensurate with the extent of their potential damages under Plaintiffs' theories of liability.  Moreover, this average recovery per class member is on par with, and exceeds, other wage and hour class action settlements involving non-exempt employees alleging similar claims.[7]

Settlement Class members who do not opt-out of the Settlement will be bound by the Settlement's terms, and will release the Releasees from all California claims that are alleged in, or that reasonably could have arisen based on the facts

---

[7] *See, e.g., Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) ("Plaintiff notes that Class Members will receive an average of approximately $198.70…Plaintiff contends that this is a substantial recovery where Defendant asserted compelling defenses to liability; Plaintiff also notes several similar actions where the gross recoveries per class member were less than $90 . . . Overall, the Court finds that the results achieved are good"); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008) (wage and hour class action settlement approved where average class member recovery was approximately $60)*; Williams v. Centerplate, Inc.*, No. 11-cv-2159-H-KSC, 2013 WL 4525428 at *4 (S.D. Cal. Aug. 26, 2013) (granting final approval of class action settlement where average recovery for each class member was approximately $108).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

alleged in, the proposed Fourth Amended Complaint. *See* Settlement, ¶¶ 8, 41. Settlement Class members who cash their settlement checks will also release their claims against the Releasees under the FLSA.[8]  *Id.*, ¶¶ 33, 42.

     The parties have agreed to designate a total $33,333.33 of the Common Fund for PAGA penalties, seventy-five percent (75%) of which will go to the LWDA, which is appropriate. *See, e.g.*, *Chu v. Wells Fargo Investments, LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA payment of $7,500 to LWDA out of $6.9 million common-fund settlement); *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) (approving PAGA payment of $7,500 to LWDA out of $1.25 million common-fund settlement).

     The proposed incentive payments to Plaintiffs of $5,000 each are also reasonable.[9]  Plaintiffs' Counsel will also file a separate motion for approval of attorney's fees not to exceed 25% of the Common Fund for all past and future attorney's fees necessary to prosecute, settle, and administer the litigation and this proposed Settlement, and for verified litigation costs not to exceed $25,000.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (in the Ninth Circuit, a 25% award is the "benchmark" attorneys' fee award). Because the proposed settlement is devoid of obvious deficiencies, this final factor also supports preliminary approval.

---

[8]  *See, e.g., Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. 2013) (approving settlement in hybrid FLSA/state law class action where class members opt in and release FLSA claims by cashing settlement checks); *Franco v. Ruiz Food Prods. Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. 2012) (same); *Barbosa v. MediCredit, Inc.*, No. EDCV 14-00063-VAP(SPx), 2015 WL 1966911 (C.D. Cal. 2015) (same).

[9]  As will be fully briefed at final approval, Plaintiffs' requested incentive payments are intended to recognize the time and effort that Plaintiffs expended on behalf of the Settlement Class. *See Rodriguez, supra*, 563 F.3d at 958 ("Incentive awards are fairly typical … and are intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action."). $5,000 incentive payments have been held to be presumptively reasonable. *See, e.g., Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202 at *7 (N.D. Cal. Feb. 6, 2012).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## IV. THE SETTLEMENT MERITS CERTIFICATION

### A. Rule 23(a)(1) Numerosity Is Satisfied

Numerosity is satisfied because there are approximately 2,084 current and former non-exempt employees in the proposed Settlement Class. See Settlement at ¶ 16; *see also Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (holding that classes of 40 or more members satisfy numerosity).

### B. Rule 23(a)(2) Commonality Is Satisfied

The Settlement Class satisfies commonality because there are common questions of fact and law arising from Plaintiffs' and the proposed Settlement Class' employment with Defendants, such as Defendants' allegedly improper rounding practices, failure to provide meal and rest periods, and its resultant violations for waiting time, wage statement and PAGA penalties – all of which Plaintiffs contends arise from a common core of facts, as discussed above.

### C. Rule 23(a)(3) Typicality Is Satisfied

According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiffs' claims are typical of those held by other non-exempt employees. Plaintiffs were employed by Defendants as hourly non-exempt employees during the relevant time periods. *See*, *generally*, Lopez and Vizcaino Declarations. Plaintiffs were subject to Defendants' challenged rounding practices and meal and rest period policies. *Id.* Because the Settlement Class consists only of other non-exempt employees, and because Plaintiffs' claims stem from Defendants' wage and hour policies and practices, typicality is satisfied.

### D. Rule 23(a)(4) Adequacy Is Satisfied

Plaintiffs are also adequate as a class representatives under Rule 23(a)(4). To satisfy this requirement, Plaintiffs and their counsel must not have conflicts of interest with the proposed classes, and must vigorously prosecute the action on

23

behalf of the classes. *Hanlon*, *supra*, 150 F.3d at 1020.  Here, there is no conflict of interest between Plaintiffs and the proposed Settlement Class.  As non-exempt employees, Plaintiffs pressed forward claims for unpaid wages, unpaid premium wage, and related penalties resulting from Defendants' allegedly unlawful wage and hour policies and practices on behalf of other non-exempt employees.  As detailed above, the proposed settlement reflects a substantial recovery of Settlement Class members' alleged damages.  Given the relatively small amounts at issue per employee, Plaintiffs assert that it is unlikely that any class member, especially a current employee, would have pursued these claims against Defendant individually. *See, e.g., Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication.").  Finally, Plaintiffs' counsel diligently litigated this case, undertook an extensive analysis of the claims and potential damages, and there are no conflicts with the Settlement Class members.  As set forth in the concurrently filed declarations of Plaintiffs' counsel, Plaintiffs' counsel are adequate to represent the proposed Settlement Class given their qualifications, skills, and experience.

## E.    Rule 23(b)(3) Predominance Is Satisfied

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *See Amchem v. Windsor*, 521 U.S. 591, 623 (1997).  Because Plaintiffs seek certification for settlement purposes, trial manageability need not be considered. *Id.* at 620.  As all Settlement Class members were allegedly deprived of wages due to Defendants' allegedly unlawful rounding practices and meal and rest period policies and practices, the Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominate. *See Hanlon*, *supra*, 150 F.3d at 1022.

V.     **THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS**

Due process requires that notice be provided by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974).  Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, Plaintiffs propose that the settlement be administered by CPT Group, Inc., an experienced class action settlement administrator, who will mail the proposed Notice Packets to the Settlement Class. *See* Declaration of Julie Green and attached exhibits.  The proposed Notice Packet advises Settlement Class members of the key terms of the settlement and the uniform 60-day deadline to opt-out, submit a dispute, or file an objection to the settlement; it provides a summary of the alleged claims, explains the recovery formula and expected recovery amount for each member of the Settlement Class, provides contact information for Plaintiffs' counsel, and notifies Settlement Class members of the date for the final approval hearing.  *See*, Settlement Exhs. A-B (Notice Packet).

VI.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of this class, collective, and representative action settlement.

Dated:  June 28, 2017                         HAINES LAW GROUP, APC

                                             By:     */s/ Paul K. Haines*
                                                     Paul K. Haines, Esq.
                                                     Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL